[Cite as *Palette v. Fowler Electric Co.*, 2014-Ohio-5376.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| TIMOTHY A. PALETTE, | : | **O P I N I O N** |
| Petitioner-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-G-3196** |
| FOWLER ELECTRIC CO., et al., | : | |
| Respondents-Appellees. | : | |

Administrative Appeal from the Geauga County Court of Common Pleas, Case No. 13 W 1022.

Judgment: Affirmed.

*Walter Kaufmann,* Boyd, Rummell, Carach & Curry Co., L.P.A., Huntington Bank Building, 4th Floor, P.O. Box 6565, Youngstown, OH 44501 (For Petitioner-Appellant).

*Patrick J. Ebner* and *William D. Brown,* Steuer, Escovar, Berk & Brown, 55 Public Square, Suite 1475, Cleveland, OH 44113 (For Respondent-Appellee, Fowler Electric Co.).

*Drew Smith,* Assistant Attorney General, 615 West Superior Avenue, State Office Building, 11th Floor, Cleveland, OH 44113 (For Respondent-Appellee, Bureau of Workers' Compensation).

DIANE V. GRENDELL, J.

{¶1} Petitioner-appellant, Timothy A. Palette, appeals from the Judgment of the Geauga County Court of Common Pleas, granting respondents-appellees, the Administrator of the Bureau of Workers' Compensation's and Fowler Electric's, Motions for Summary Judgment, and denying Palette's Partial Motion for Summary Judgment,

entering judgment against Palette on his request for workers' compensation. The issue to be determined by this court is whether an employee who travels to different job sites on a daily basis is a fixed-situs employee, subject to the "coming and going rule" for the purposes of determining whether he is entitled to workers' compensation and, if so, whether the "special hazard exception" applies. For the following reasons, we affirm the decision of the court below.

{¶2} Palette filed an application for workers' compensation benefits on July 4, 2012, arising from his involvement in an automobile accident that occurred on January 16, 2012, in which he sustained back injuries. He claimed that this accident arose out of his employment with Fowler Electric. This claim was disallowed by the Administrator of the Bureau of Workers' Compensation District Office on July 25, 2012. This order was affirmed by the District Hearing Officer in a finding mailed to Palette on September 5, 2012. The District Officer found that, since Palette was driving to attend a mandatory meeting at his workplace, he was a fixed-situs employee on that date and was subject to the "coming and going rule."

{¶3} A subsequent appeal was heard by a Staff Hearing Officer, which was denied for the above reasons. An appeal from this decision was refused by the Industrial Commission of Ohio.

{¶4} On November 7, 2013, Palette filed a Petition in Appeal in the Geauga County Court of Common Pleas.[1] In it, he appealed the foregoing determinations relating to his claim for workers' compensation, pursuant to R.C. 4123.512.

---

1. Palette previously filed a Petition in Appeal, case number 13 W 000011, in the Geauga County Court of Common Pleas, which was dismissed without prejudice on October 21, 2013.

{¶5} Fowler Electric filed an Answer on December 9, 2013. The Administrator of the Bureau of Workers' Compensation filed an Answer on December 11, 2013.

{¶6} Palette filed a Partial Motion for Summary Judgment on January 15, 2014. He argued that, since he traveled to jobs throughout the state of Ohio, was driving a company vehicle at the time of the accident, and was going to pick up repair parts prior to traveling to Fowler Electric's office on that date, he was not a fixed-situs employee and was not subject to the "coming and going" rule, which would prevent him from recovering compensation for an accident that occurred while driving to work.

{¶7} The Bureau of Workers' Compensation filed a Response and a Motion for Summary Judgment on January 29, 2014, asserting that Palette was traveling to his employer's office for a mandatory meeting and was a fixed-situs employee at the time of the accident, i.e., he had a fixed job site and, therefore, could not be compensated for injuries incurred while commuting to work.

{¶8} Fowler Electric filed a Motion for Summary Judgment on January 30, 2013, raising similar arguments.

{¶9} The affidavits and depositions attached to the Motions for Summary Judgment set forth the relevant facts in this matter.[2]

{¶10} Pursuant to Palette's deposition testimony, he worked as a field service technician for Fowler Electric, servicing heating, ventilation, and air conditioning equipment. On Monday, January 16, 2012, he was involved in an automobile accident

---

2. Although the depositions were not filed with the trial court and only copies were attached to the motions for summary judgment, "it is within the discretion of the trial court, when ruling on a motion for summary judgment, to consider or not to consider unfiled and uncertified portions of deposition testimony, where no objection was made to the form or substance of the deposition testimony." *Royce v. Yardmaster, Inc.*, 11th Dist. Lake No. 2007-L-080, 2008-Ohio-1030, ¶ 36. Neither party has objected to the use of the attached depositions and the lower court noted that it considered them in reaching its determination.

on Route 422, at approximately 6:30 a.m., while driving his company vehicle. Palette testified that, when the accident occurred, he was driving from his home in Warren to a supply house to pick up a part, prior to attending a Monday morning meeting at Fowler Electric's office in Oakwood Village.[3] Palette was cited by police in the accident, which occurred while he was passing two vehicles. Due to the accident, Palette experiences back pain and is unable to work.

{¶11} Palette generally performed his work at individual customers' premises and did not have an office at Fowler Electric. He would report to the customer's location after receiving phone calls dispatching him and did not go to the Fowler Electric office to receive these assignments.

{¶12} Palette explained that part of his employment involved going to Fowler Electric's headquarters on Mondays to drop off paperwork and attend meetings. He generally took Route 422 when driving to those meetings, as he did on the morning of the accident. He often arrived before the meeting to complete his paperwork and would be at the office by 7 or 7:30 a.m.

{¶13} Kirk Schaffner, a service manager at Fowler Electric and Palette's supervisor, explained that, on Monday mornings, employees would turn in their paperwork for the foregoing week at the Fowler Electric office. Brief meetings were also held on those mornings, commencing at 7:30 a.m. and lasting approximately half an hour.

{¶14} Schaffner explained that Palette, on any given day, may be dispatched to jobs throughout Ohio, although the majority of the customers are "between Akron and

---

3. Palette had stated in his initial workers' compensation request report that the accident occurred while he was traveling "to a mandatory meeting on Monday morning."

4

the northeast part of Ohio." During the week of the accident, Palette was also "on call" and could be given a job at any time during the day.

{¶15} Schaffner explained that employees are paid to attend the meeting, but they are not paid for travel to the meeting. Regarding individual jobs to which employees are dispatched, Schaffner explained that employees were paid for travel time that commenced either 50 miles or one hour after beginning a trip. Palette denied being aware of a rule that there was no payment for the first 50 miles of travel to a work site.

{¶16} On March 5, 2014, the trial court issued a Decision, granting summary judgment in favor of appellees and denying Palette's Partial Motion for Summary Judgment. The court found that Palette was a fixed-situs employee, his injury did not arise out of his employment, and the special hazard exception did not apply to Palette's travel on the date of the accident. The court filed a Judgment on the same date, restating its summary judgment ruling and entering judgment in favor of the appellees.

{¶17} Palette timely appeals and raises the following assignments of error:

{¶18} "[1.] The trial court committed prejudicial error in finding that Palette was a fixed situs employee, Palette was a non-fixed situs employee; therefore, the coming and going rule cannot apply to deny this claim.

{¶19} "[2.] The trial court committed prejudicial error in failing to apply the *Ruckman* special hazard rule, in this case, and therefore refusing to grant Plaintiff's partial motion for summary judgment on that ground."

{¶20} In cases involving workers' compensation appeals, general rules for review of summary judgment apply. *West v. Lukjan Metals Prods., Inc.*, 11th Dist.

5

Ashtabula No. 2009-A-0014, 2009-Ohio-5761, ¶ 14. Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶21} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶22} In his first assignment of error, Palette argues that the trial court failed to consider whether he was a non-fixed-situs employee and "assumed" that he was a fixed-situs employee. Thus, the lower court erred in concluding that he was not entitled to workers' compensation for his accident.

{¶23} "To qualify for workers' compensation, an employee must suffer an injury 'in the course of, and arising out of,' his employment." (Citations omitted.) *West*, 2009-Ohio-5761, at ¶ 16. "The phrase 'in the course of employment' limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service." *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120, 689 N.E.2d 917 (1998). "[A] compensable injury does not necessarily have to be sustained

6

in the actual performance of work; rather, an injury is compensable if it is sustained while engaging in activities that are consistent with the employment and logically related to the employer's business." *Barber v. Buckeye Masonry & Constr. Co.*, 146 Ohio App.3d 262, 269, 765 N.E.2d 951 (11th Dist.2001).

{¶24} "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66, 572 N.E.2d 661 (1991), syllabus. This is referred to as the "coming and going" rule, which is "a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arises out of' the employment relationship so as to constitute a compensable injury." *Ruckman* at 119.

{¶25} The "coming and going" rule applies to "fixed-situs" employees. The Supreme Court of Ohio has defined a fixed-situs employee as one who "commences his or her substantial employment duties only after arriving at a specific and identifiable workplace designated by his employer," regardless of the fact that he may be "reassigned to a different work place monthly, weekly, or even daily." *Id.* at paragraph one of the syllabus. "In such a situation, each particular job site may constitute a fixed place of employment." *Barber* at 270.

{¶26} Regarding Palette's status as a fixed-situs employee, he generally commenced his duties servicing heating and cooling units when arriving on the site of his job on that day. Palette arrived at the site of his current job without first reporting to the Fowler Electric office, where he typically went only on Monday, to turn in his

7

paperwork and attend meetings. As noted above, the focus for determining if an individual is a fixed-situs employee is whether he commences his duties after arriving at a specific and identifiable work place. Palette began his duties after reporting to the specific location he would be working on that date. According to Schaffner's testimony, much of Palette's work took place in northeast Ohio, specifically near the Akron area, although he could be dispatched to other locations in Ohio. The work records presented in the motions for summary judgment demonstrate that almost all of Palette's jobs over a three-month period took place in a four-county radius, which included Cuyahoga, Lorain, Summit, and Stark counties. While his work sites change from day to day, based on the customer to whom he is providing service, such a change is permissible under *Ruckman*.

{¶27} In *Barber*, a similar case, this court found an appellant to be a fixed-situs employee when he would "travel daily to assigned construction sites," within a three-county radius, reported directly to a site until he was informed of a transfer to another site, which often varied from day to day, and did not report to the office to receive his assignments. 146 Ohio App.3d at 265, 765 N.E.2d 951. While there are some factual differences between *Barber* and the present case, such as the fact that Palette drives a company vehicle, we do not find that these details render the case inapplicable.

{¶28} Palette argues, however, that *Barber* should be distinguished on the basis that he often reports to two jobs sites in one day, a fact that is supported by his work records. While this fact was not present in *Barber* or *Ruckman*, it does not alter the conclusion that Palette was a fixed-situs employee. This circumstance did not exist in those cases, so no conclusion was reached that a fixed-situs employee cannot report to

8

two work sites in one day. Since the test applied focuses on whether an employee commences his duties after reporting to a work site, several districts, although not all that have considered this issue, have found an individual to be a fixed-situs employee when reporting to multiple work sites on a day. *Gilham v. Cambridge Home Health Care, Inc.*, 5th Dist. Stark No. 2008 CA 00211, 2009-Ohio-2842, ¶ 18 (appellant was a fixed-situs employee when, although she traveled to the homes of two separate clients on one day, she commenced her substantial job duties when arriving at each home and ended the duties upon leaving); *Smith v. Akron*, 9th Dist. Summit No. 22101, 2004-Ohio-4974, ¶ 12 (a landscaper was a fixed-situs employee when he traveled to two separate locations on a date, which were both fixed locations); *Brown v. Lake Erie Elec. Co.*, 12th Dist. Clermont No. CA2010-04-030, 2010-Ohio-4950, ¶ 16 (finding a "journeyman electrician" to be a fixed-situs employee when he reported to a designated job location to perform his work). While an employee who travels to several different locations in a day may not always be a fixed-situs employee, much of this depends on the character of the work, in which traveling is inherent, such as a traveling salesman who has no fixed location to report to on a given day. To the extent that it can be argued that this subjects an individual to a greater travel risk, this can always be addressed in the exceptions to the coming and going rule, which will be discussed further.

{¶29} While Palette contends that he had other duties in addition to the work performed at the individual assigned job sites, which included purchasing parts when necessary, the *Ruckman* court noted that, in determining whether an individual is a fixed-situs employee, "the focus is on whether the employee commences his *substantial*

9

employment duties only after arriving at a specific and identifiable work place."
(Emphasis added.) 81 Ohio St.3d at 119, 689 N.E.2d 917. The fact that Palette would sometimes need to purchase parts does not alter the nature of his employment. *See Moss v. Conrad*, 157 Ohio App.3d 47, 2004-Ohio-2065, 809 N.E.2d 36, ¶ 18 (4th Dist.) (when appellant sometimes left a fixed site to run errands, this did not alter her status as a fixed-situs employee).

{¶30} In addition to the fact that Palette is a fixed-situs employee, based on his day to day activities, he was also heading to a clearly fixed site on the date of the accident. On Monday mornings, Palette reported to the specific work site of the company's main office, a place where he had the duty of attending a meeting and completing/handing in paperwork. This site was known to Palette and was where his duties commenced. The accident in the present matter occurred while Palette was driving toward the Fowler Electric office before the designated time, on a route that he always traveled. *See Minton v. Fid. & Guar. Ins. Underwriters*, *Inc.*, 2nd Dist. Miami No. 04CA13, 2004-Ohio-5814, ¶ 21 (although an employee traveled to different locations to meet with clients, since he was traveling to his employer's office at the time of the accident, his travel was the same as any fixed-situs employee).

{¶31} Palette raises several cases in support of his contention that he is not a fixed-situs employee. In *Cossin v. Ohio State Home Servs., Inc*, 10th Dist. Franklin No. 12AP-132, 2012-Ohio-5664, the court did note that when the nature of an employee's work requires him to travel from place to place, he is not a fixed-situs employee. *Id.* at ¶ 26, citing *Lohnes v. Young*, 175 Ohio St. 291, 194 N.E.2d 428 (1963). However, for the reasons discussed above, we do not find that this holding applies under the specific

facts of this case. Further, while Palette cites *Bennett v. Goodremont's, Inc.*, 6th Dist. Lucas No. L-08-1193, 2009-Ohio-2920, that case involved "a traveling salesman," who sold photocopiers throughout a certain region. It does not appear he was assigned to go to a specific location by his employer on a given day to complete a job, but covered his territory in general to conduct sales.

**{¶32}** The first assignment of error is without merit.

**{¶33}** In his second assignment of error, Palette argues that, even if he were a fixed-situs employee, the special hazard exception applies.

**{¶34}** Courts have recognized three exceptions to the "coming and going" rule: (1) when the injury occurs within the "zone of employment"; (2) when the employment creates a "special hazard"; or (3) there is a causal connection between the employee's injury and employment based on the "'totality of the circumstances' surrounding the accident." (Citation omitted.) *Cunningham v. Lukjan Metals Prods.*, *Inc.*, 11th Dist. Ashtabula No. 2009-A-0033, 2010-Ohio-822, ¶ 16.

**{¶35}** Under the special hazard exception, a "fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public." *Ruckman*, 81 Ohio St.3d 117, 689 N.E.2d 917, at paragraph two of the syllabus.

**{¶36}** We initially note that, although Palette points to his travel in regards to his employment in general, this court has found that, "[t]o qualify under the 'special hazard' exception," the appellant needed to show that the risk created by his traveling to his

11

work site *on the date of the accident* was greater than the risk common to the general public. *Seese v. Admr., Bur. of Workers' Comp.*, 11th Dist. Trumbull No. 2009-T-0018, 2009-Ohio-6521, ¶ 41.

{¶37} In that regard, under the circumstances that existed at the time of the accident, the special hazard exception does not apply. Palette was driving to the Fowler Electric office, a place he drove to each Monday, traveling the route he always followed when making that trip. The drive was under an hour. He faced no greater risk than an individual commuting to work on a daily basis would experience. *Ruckman* at 125 ("the risks associated with highway travel are not distinctive in nature from those faced by the public in general," when they do not involve "interstate or lengthy intrastate commutes").

{¶38} Even when evaluating the risk experienced by Palette in general as a result of his job under the *Ruckman* factors he cites, we cannot find that there is a risk greater than that to the public associated with his driving. While *Ruckman* evaluated the temporary nature and changing location of the employees' work sites, it emphasized that such locations were remote. There is no indication that the same considerations exist here, as there is nothing particularly remote about Palette's work sites, unlike the drilling sites in *Ruckman*. Further, while the *Ruckman* court noted the long commutes to the remote work sites, Palette's work documentation shows that he frequently travels within the same approximate four-county radius, although he may travel to other locations on occasion. The *Ruckman* court contemplated the fact that the employees sometimes had to arrange for overnight accommodations and that the work sites were within a "one-day drive," factors supporting the lengthy nature of the commute.

12

{¶39} While the distances Palette traveled may be longer than the average commute, they do not appear to fall under the special hazard rule. In *Barber*, this court noted that "[t]he risk of driving moderate distances on a public road is not in and of itself a special hazard because such a risk is common to all individuals who commute daily to work" emphasizing that the holding of *Ruckman* is limited to those in "extreme" circumstances. *Barber*, 146 Ohio App.3d at 273, 765 N.E.2d 951 (a three-county area of travel does not create a special hazard).

{¶40} The second assignment of error is without merit.

{¶41} For the foregoing reasons, the Judgment of the Geauga County Court of Common Pleas, granting summary judgment in favor of the appellees and entering judgment against Palette, is affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.